**Richard OSTMAN, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

**No. 6199.**

Supreme Court of Alaska.

March 2, 1984.

---

Brad J. Brinkman, Findley & Brinkman, Juneau, for appellant.

John B. Gaguine, Asst. Atty. Gen., and Wilson Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE,· Chief Justice.

This case arises under the Alaska Limited Entry Act, AS 16.43.010—16.43.990, which created the Commercial Fisheries Entry Commission (Commission) to administer a program to limit entry into Alaskan commercial fisheries. The Commission distributes entry permits for each fishery to those applicants who have the highest point totals. Points are awarded based on the degree of hardship that would be suffered by exclusion from the fishery. AS 16.43.250(a).

Richard Ostman applied for a limited entry permit in 1975. On three separate occasions, in 1976, 1977 and 1979, the Commission informed Ostman that it would not issue him an entry permit. Each time the denial was due to inadequate points. Following the 1979 denial, Ostman appealed to the superior court. That court, Judge Stewart presiding, dismissed the appeal on the ground that Ostman failed to exhaust his administrative remedies.

For the reasons discussed below, we reverse and remand to the superior court to consider Ostman's appeal on the merits.

I

On April 17, 1975, Richard Ostman filed a timely application for a Bristol Bay salmon drift gill net entry permit. He claimed fourteen points. In September, 1975 the Commission sent Ostman a classification notice. The notice informed Ostman that all 14 points claimed had been verified. The notice also stated that an administrative hearing must be requested within 45 days. After that, according to the letter, "there will be no additional opportunity to request an administrative hearing." Presumably because all his claimed points had been granted, Ostman did not request a hearing. On November 26, 1976, the Commission sent a form notice to Ostman indicating that the Commission was unable to issue him a permanent entry permit because of "inadequate points."

Despite this denial, Ostman continued to submit numerous documents in support of additional point claims throughout 1977. Much of this evidence was sent on the advice of Commission staff. Ostman was issued an interim permit from the Commission in May, 1977, which Ostman was told was "valid only until a final determination of your qualifications for an entry permit is made." On November 25, 1977, the Commission sent Ostman another form letter which stated the Commission was unable to issue a permanent entry permit because of "inadequate points."

On May 11, 1978, the Commission sent yet another form letter to Ostman. This letter stated:

> Our records indicate that you have applied for, but not been issued, an entry permit to harvest salmon with drift net gear in Bristol Bay administrative area. Under 20 AAC 05.520(d)(1), you have until July 1, 1978 to submit evidence in support of additional point claims on your application. After that date, your application will be closed to further consideration.

During the months of May and June of 1978, Ostman submitted affidavits, documentary evidence, and legal arguments to the Commission. Ostman then had 14 veri-

fied points; he needed 17 points to obtain a permit. The evidence submissions were aimed at obtaining the three needed points by showing that Ostman's moral obligation to care for his sick wife in 1972 was an unavoidable circumstance that prevented him from fishing that year.

Commission Hearing Officer Domke's notes indicate that on May 30, 1978, he advised Ostman "that points would not be I.D.'ed [given on initial determination] for 1972; would have to go to Commission for written findings." On June 8, 1978, Hearing Officer Domke issued a five page Recommended Decision. Domke recommended that Ostman be awarded the three points for 1972 and that his application be reclassified at 17 points, which was sufficient to entitle Ostman to a permanent entry permit.

On February 6, 1979, the Commission issued a written decision rejecting the Hearing Officer's recommended action. The decision informed Ostman that his classification would remain at 14 points, which was inadequate for a permanent permit. The Commission's decision was preceded by a cover letter, which stated:

> Enclosed also is a copy of the Commission regulation outlining your right to request reconsideration of this decision, and Appellate Rule 45 explaining your right to obtain judicial review.

On March 6, 1979, Ostman requested reconsideration of the Commission's decision. He alleged a number of material inaccuracies in the Commission's findings. On April 11, 1979, the Commission denied the request. The denial stated that "[t]he ... Commission ... voted to deny your request for reconsideration of its adjudication .... A copy of Appellate Rule 45 outlining your right to seek judicial review of this decision is enclosed."

Ostman filed a timely appeal to the superior court. He sought a ruling by the superior court directing that he be issued a permanent entry permit.

The Commission filed a motion to dismiss for failure to exhaust administrative remedies. On October 1, 1980, the superior court granted the Commission's motion to dismiss after finding that Ostman "did not request adjudicatory hearing from the Commission on the subject matter of this appeal...."

Ostman then filed a motion for reconsideration of the dismissal. On June 18, 1981, the superior court entered an order denying reconsideration. This appeal followed.

## II

At the outset we must determine whether the February, 1979 Commission decision was a final determination subject to judicial review. AS 16.43.120(a) provides:

> The administrative adjudication procedures of the Administrative Procedure Act (AS 44.62) do not apply to adjudicatory proceedings of the commission except that final administrative determinations by the commission are subject to judicial review as provided in AS 44.62.560—44.62.570.[1]

This appeal is governed, however, by part 6 of our Appellate Rules, specifically Appellate Rule 602(a)(2) (former Appellate Rule 45) which provides:

> The time within which an appeal may be taken to the superior court from an administrative agency shall be 30 days from the date that the order appealed from is mailed or delivered to the appellant. If a request for agency reconsideration is timely filed before the agency, the notice of appeal must be filed within

---

1. The relevant portion of AS 44.62.560 is section (a), which states:

 Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters. Except as otherwise provided in this section, the notice of appeal shall be

 filed within 30 days after the last day on which reconsideration can be ordered, and served on each party to the proceeding. The right to appeal is not affected by the failure to seek reconsideration before the agency.

 AS 44.62.570 concerns the scope of review and is not directly relevant to this decision.

30 days after the agency's reconsideration decision.

While this rule does not expressly set forth a finality requirement, a finality requirement is nonetheless implied since Appellate Rule 610 provides for discretionary review of interlocutory orders.

■ "The test for determining whether a judgment is or is not final 'is essentially a practical one.'" *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 184 (Alaska 1980) *quoting City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 628 (Alaska 1979). As we stated in *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030–31 (Alaska 1972):

> The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, ... one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.... Further, the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment, and focus primarily on the operational or "decretal" language therein.

(Citation omitted) (footnotes omitted).[2]

Although this court has not considered the question of whether a rejection of an application constitutes a final order, other courts with tests similar to ours have addressed this issue. In *Bock v. State*, 91 Wash.2d 94, 586 P.2d 1173 (1978), the Washington Supreme Court considered whether a letter from the Board of Pilotage Commissioners informing the applicant it would take no further action on his application for a pilot's license was a final decision subject to judicial review. The court held the letter constituted a final decision, since it was "both a denial of a right (to hold a license) and the fixing of a legal relationship as a consummation of the administrative process (denial of the application for a license based on the July 1975 examination)." *Id.* 586 P.2d at 1176.

*Ideal Basic Industries, Inc. v. Morton*, 542 F.2d 1364 (9th Cir.1976) is also helpful. There, a cement manufacturer seeking a patent application on mining claims appealed an order of the federal district court remanding the case back to the Interior Board of Land Appeals for further findings. While holding the remand non-final, the court also noted, "[t]he secretary has not yet rejected Ideal's application for a patent, and until such a rejection, or similar irreparable injury to Ideal, further judicial intervention is inappropriate." *Id.* at 1370.

If the decision Ostman received constituted the final rejection of his permit application, then it was clearly a final order subject to judicial review. The cover letter and decision sent to Ostman do not expressly indicate that no further action will be taken on his application. Instead the decision indicates that the application will remain at 14 points. That language arguably implies that in the future more points could be awarded. Yet the correspondence also indicates that Ostman can now pursue judicial review, which although not determinative,[3] is persuasive evidence of an intended finality. However, it is necessary to go beyond the mere form of the decision and examine its operative effect on Ostman. *Greater Anchorage Area Borough*, 504 P.2d at 1031.

Ostman had submitted evidence in support of his unavoidable circumstances claim after receiving a May, 1978 letter from the Commission soliciting such evidence. This solicitation was pursuant to 20 AAC 05.-520(d)(1), which states:

**2.** There is some confusion surrounding the definition of finality as developed in these three opinions. *Thibodeau* expressly overruled the holding of *Greater Anchorage Area Borough*. Thus, when the intermediate appellate court remands a case for further proceedings before the administrative agency, such action is a non-final order. *Thibodeau*, 595 P.2d at 629. This is not the situation here, however, since the finality of the administrative determination is at issue and the superior court dismissed the appeal. As is evident from our opinion in *Matanuska Maid*, the *Greater Anchorage Area Borough* test remains valid to resolve finality questions outside the sphere of *Thibodeau*. 620 P.2d at 184.

**3.** See, e.g., *Estate of Smith v. Commercial Fisheries Entry Commission*, 635 P.2d 465 (Alaska 1981).

(d) Evidence offered by the applicant for an entry permit will be accepted by the commission within the following time limits:

(1) Evidence in support of those applications which were to be submitted to the commission within the time limitations of 20 AAC 05.510(a) will be considered by the commission if received on or before July 1, 1978, unless the applicant is notified otherwise.

 Ostman's evidence was evaluated by a Hearing Officer who issued a recommended decision. The Commission, in what it termed an "adjudication," rejected the submitted claims. Such action constituted a final administrative decision that new points would not be awarded, and hence that no permanent permit would be forthcoming. Indeed, the practical effect of the decision was to reject finally Ostman's application. No more opportunities were available for Ostman to seek additional point awards—the evidence submission period of 20 AAC 05.520(d)(1) had expired. Therefore, we conclude that the February, 1979 Commission decision was a final administrative determination.[4]

### III

The Commission's primary argument for dismissal before the superior court and affirmance of that decision before this court is that Ostman has failed to exhaust his administrative remedies. There are two alleged failures. The first is Ostman's failure to request a hearing within 30 days after his classification in 1975. The second is Ostman's failure to request a hearing after the Commission issued its decision in 1979. For the reasons discussed below, we do not find Ostman's failure to request a

hearing on either of these two occasions to preclude judicial review.

 Ostman's failure to request a hearing in 1975 is not relevant to the 1979 Commission determination. Ostman was not seeking review of those point awards in 1975—he was seeking review of the Commission's denial of the three additional points. It is true that Ostman's ability to contest the 1975 determination ended 30 days after the classification notice was sent out. But here a new adjudication was begun in the course of 1978 and 1979 pursuant to 20 AAC 05.520(d)(1). This regulation was not adopted until January, 1978. It created a new adjudicatory determination procedure distinct from the initial determination in 1975.[5] Thus, Ostman's failure to request a hearing in 1975 does not preclude the 1979 appeal.[6]

 The Commission contends that treating the reopening of evidentiary submissions in 1978 as a new adjudicatory procedure impacts unfavorably on the timeliness of permit distribution. It contends it was under no compulsion to offer this second chance and hence no procedural protections need attach. We rejected this argument in *Forquer v. State, Commercial Fisheries Entry Commission,* 677 P.2d 1236 (Alaska 1984). In *Forquer* we stated, "although the [Limited Entry] Act aims at controlling entry into the commercial fisheries, it seeks as a fundamental purpose to do so without 'unjust discrimination.' AS 16.43.010. By deciding to reopen the evidence submission period the Commission presumably had additional permits available to grant to such applicants." 677 P.2d 1236, 1242. In *Forquer* we found that applicants were entitled to a hearing after submitting evidence pursuant to the new

---

**4.** Since the appeal was filed within 30 days of the reconsideration decision, it was timely under Appellate Rule 602(a)(2).

**5.** *Forquer v. State, Commercial Fisheries Entry Comm'n,* 677 P.2d 1236, 1242 (Alaska 1984).

**6.** This case presents an entirely different question than Estate of *Smith v. Commercial Fisheries Entry Commission,* 635 P.2d 465 (Alaska

1981). In that case, the applicant's estate requested a second hearing in 1978 on the permit application. However, no new evidence was submitted to support additional point claims. Thus the estate sought a belated review of the 1975 initial determination. In contrast, in the present case, Ostman seeks review of the additional adjudicatory determination created by 20 AAC 05.520(d)(1).

regulation. Our holding in *Forquer* thus recognized the independent procedural protections which attached to the evidentiary submission period created by 20 AAC 05.-520(d)(1). Although not obliged to adopt such a regulation, once the Commission chose to do so, those who submitted evidence were entitled to judicial review of the Commission determination.

The Commission also contends that Ostman should have requested a hearing at the Commission level after the 1979 decision; since he failed to do so, he can not now bring this appeal. We find, however, that Ostman's failure to request a hearing at this stage was excused due to the futility of such a request.

Although in *Forquer* we recognized the right of an applicant to a hearing after a Commission determination on additional evidence, that holding does not establish that such a hearing is a prerequisite to judicial review on the merits of the Commission's determination. "[T]here are situations in which one may possess the alternatives of either seeking judicial review directly from a decision of the [agency] or seeking review by the [agency] and then invoking judicial review." *Union Oil Company of California v. State, Department of Natural Resources*, 526 P.2d 1357, 1365 (Alaska 1974). We find the instant case to be such a situation.

If Ostman had requested a hearing, the request would have been denied. Commission regulation 20 AAC 05.520(e) expressly precluded a hearing opportunity for evidence submissions under 520(d)(1). 20 AAC 05.520(e), adopted with 520(d)(1) in January 1978, states:

> A Commission decision upon evidence submitted under (d) of this section does not constitute a determination for which the applicant may request and receive an administrative hearing under 20 AAC 05.805 if the applicant has already received the opportunity to request and receive an administrative hearing under 20 AAC 05.805(b)(1).[7]

"The exhaustion requirement has been dispensed with where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of adverse decision." *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982); *see also Aleknagik Natives Limited v. Andrus*, 648 F.2d 496, 499–501 (9th Cir.1980); *Porter County Chapter of Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359, 363 (7th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978).

It is beyond dispute that had Ostman requested a hearing, the request would have been denied. Any further pursuit of administrative remedies after the February, 1979 decision and accompanying request for reconsideration would have been futile. We therefore hold that the exhaustion doctrine poses no bar to a review of Ostman's case on the merits.

Such a result is in keeping with the principle of exhaustion of remedies. No "premature interruption of the administrative process" has occurred. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, 203 (1969). The February, 1979 decision was a final administrative determination. An appeal of that determination is not barred by the exhaustion doctrine. Therefore, the trial court erred in dismissing the appeal.

We, therefore, REVERSE and REMAND to the superior court for a review of Ostman's case on the merits.

---

7. In *Forquer* we held that 20 AAC 05.520(e) was inconsistent with AS 16.43.260(c), which provides disappointed permit applicants an opportunity to request a hearing. 677 P.2d at 1243.