STATE of Alaska, DEPARTMENT OF
FISH AND GAME, SPORT FISH
DIVISION, Petitioner,

v.

Andrea MEYER and Alaska State
Commission on Human Rights,
Respondents.

No. S–6036.

Supreme Court of Alaska.

Nov. 17, 1995.

Marie Sansone, David M. Weingartner, Assistant Attorneys General, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Randall G. Simpson, Jermain, Dunnagan & Owens, P.C., Anchorage, for Respondent Andrea Meyer.

Mark Ertischek, Anchorage, for Respondent Alaska State Commission for Human Rights.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Andrea Meyer filed a discrimination complaint with the Alaska State Commission for Human Rights (Commission) against her employer, the Alaska Department of Fish and Game (ADF & G). We hold that the Commission's order closing Andrea Meyer's case is judicially reviewable. We further hold that Meyer's claim of discrimination is supported by substantial evidence.

## II. FACTS AND PROCEEDINGS

Andrea Meyer began working for ADF & G in 1977 as a seasonal field researcher for the Russian River Sockeye Salmon Fishery. Her job title was Fisheries Biologist I (FBI). Meyer had substantial previous experience as a biologist as well as a B.A. in biology. During her employment with ADF & G, Meyer's primary duty was the creel census. She also computed fisheries data, operated the weir at Lower Russian Lake, assisted in the production of area surveys, conducted salmon spawning escapement counts, enforced Fish and Game regulations, and conducted group tours in which she explained the fishery and the wildlife of the area.

In March 1987 Meyer filed a discrimination complaint against ADF & G with the Alaska State Commission for Human Rights.[1] The complaint alleged four specific instances which caused Meyer to believe her employer had discriminated against her on the basis of gender and also asserted that no women employed in the Sport Fish Division for Region II held the position of Fish Biologist II (FBII) or higher.

In March 1989 the Commission's executive director issued a closing order, finding that Meyer's allegations were not supported by substantial evidence and dismissing the case. Meyer requested reconsideration of the clos-

ing order. The Commission's chairperson, Katie Hurley, ordered the case reopened for further investigation because she believed that the investigation was insufficient to conclude that ADF & G had provided legitimate nondiscriminatory reasons for denying Meyer employment extensions or job assignments. In March 1991, after further investigation and review by the Commission staff, the executive director again closed the file on Meyer's complaint, summarizing the additional investigation as follows:

> [T]he additional investigation conducted by Commission staff determined that respondent's defense to complainant's prima facie case is legitimate and nondiscriminatory and that complainant has failed to rebut respondent's legitimate nondiscriminatory reason. Therefore, I find that complainant's allegations are not supported by substantial evidence.

Meyer again asked for reconsideration; Commissioner Esther A. Wunnicke denied her request in an order which contained an entry which read as follows:

> A person dissatisfied with a Commission Order dismissing the complaint may obtain judicial review by Superior Court in accordance with AS 44.62.560–44.62.570. An aggrieved person must file an appeal with the Superior Court within 30 days of the issuance of the Order of the Commission.

Meyer appealed the closing order to superior court. ADF & G argued that judicial review of a case-closing order is not available and that even if available, the Commission did not abuse its discretion by finding that Meyer's complaint was not supported by substantial evidence. The superior court determined that such orders are appealable to the superior court and that the Commission abused its discretion in ruling that Meyer did not produce substantial evidence of "pretext/discrimination." It consequently reversed the Commission's decision and remanded "for

1. AS 18.80.100 authorizes any person aggrieved by discriminatory conduct prohibited by statute to file a complaint with the Commission.

Under AS 18.80.110 the executive director or a member of the Commission's staff

> shall informally investigate the matters set out in a file complaint, promptly and impartially. If the investigator determines that the allega-

tions are supported by substantial evidence, the investigator shall immediately try to eliminate the discrimination complained of, by conference, conciliation, and persuasion.

If these informal efforts are unsuccessful, the executive director is required to hold a hearing before the Commission. AS 18.80.120.

further proceedings under AS 18.80.110 and, if appropriate, 18.80.120." We granted ADF & G's petition for review under Alaska Rule of Appellate Procedure 402.[2]

## III. *DISCUSSION*

The Alaska Civil Rights Act permits a person aggrieved by discriminatory conduct to file a complaint with the Alaska State Commission for Human Rights. AS 18.80.100. The executive director or a staff member must then informally investigate the complaint to determine whether the allegations of the complaint are supported by substantial evidence. AS 18.80.110. If the investigator determines that the allegations are supported by substantial evidence, "the in-

vestigator shall immediately try to eliminate the discrimination complained of, by conference, conciliation, and persuasion." *Id.* By implication, if the investigator determines that the allegations of the complaint are not supported by substantial evidence, the complaint is dismissed. If the investigator determines that substantial evidence does exist and informal efforts to eliminate the discrimination do not succeed, a hearing before the Commission is required. AS 18.80.120. At the conclusion of the hearing, the Commission is required to enter an order. AS 18.80.130. The order is reviewable in court in accordance with Alaska's Administrative Procedure Act. AS 18.80.135(a).[3]

**2.** Although the Alaska State Human Rights Commission is listed as a co-respondent with Andrea Meyer, the Commission was granted permission to submit a brief in support of ADF & G's position. Meyer was permitted to submit a reply to the Commission's brief.

**3.** The following are the relevant sections of the Civil Rights Act.

Sec. **18.80.100.** Complaint.

A person who is aggrieved by any discriminatory conduct prohibited by this chapter may sign and file with the commission a written, verified complaint stating the name and address of the person alleged to have engaged in discriminatory conduct, and the particulars of the discrimination. The executive director may file a complaint in like manner when an alleged discrimination comes to the attention of the director.

Sec. **18.80.110.** Investigation and conciliation.

The executive director or a member of the commission's staff designated by the executive director shall informally investigate the matters set out in a filed complaint, promptly and impartially. If the investigator determines that the allegations are supported by substantial evidence, the investigator shall immediately try to eliminate the discrimination complained of, by conference, conciliation, and persuasion.

Sec. **18.80.120.** Hearing.

If the informal efforts to eliminate the alleged discrimination are unsuccessful, the executive director shall inform the commission of the failure, and the commission shall provide the respondent and the complainant with notice of the failure and shall serve written notice together with a copy of the complaint, requiring the person, employer, labor organization, or employment agency charged in the complaint to answer the allegations of the complaint at a hearing before the commission. The hearing shall be held by the commission at the place where the unlawful conduct is alleged to have occurred unless the person, em-

ployer, labor organization, or employment agency requests a change of venue for good cause shown. The case in support of the complaint shall be presented before the commission by the executive director or a designee who shall be a bona fide resident of the state. The person charged in the complaint may file a written answer to the complaint and may appear at the hearing in person or otherwise, with or without counsel, and submit testimony. The executive director has the power reasonably and fairly to amend the complaint, and the person charged has the power reasonably and fairly to amend the answer. The commission is not bound by the strict rules of evidence prevailing in courts of law or equity. The testimony taken at the hearing shall be under oath and shall be transcribed at the request of any party to the hearing.

Sec. **18.80.130.** Order.

(a) At the completion of the hearing, if the commission finds that a person against whom a complaint was filed has engaged in the discriminatory conduct alleged in the complaint, it shall order the person to refrain from engaging in the discriminatory conduct. The order must include findings of fact, and may prescribe conditions on the accused's future conduct relevant to the type of discrimination. In a case involving discrimination in

(1) employment, the commission may order any appropriate relief, including but not limited to, the hiring, reinstatement or upgrading of an employee with or without back pay, restoration to membership in a labor organization, or admission to or participation in an apprenticeship training program, on-the-job training program, or other retraining program;

(2) housing, the commission may order the sale, lease, or rental of the housing accommodation to the aggrieved person if it is still available, or the sale, lease, or rental of a like accommodation owned by the person against whom the complaint was filed if one is still available, or the sale, lease, or rental of the

 ADF & G and the Commission argue that the superior court's decision should be reversed because (1) the decision to close Meyer's case for lack of substantial evidence is not reviewable, and (2) if the decision is reviewable, it should be reviewed under the abuse of discretion standard and should be affirmed because there was no abuse of discretion. Meyer argues that the superior court's opinion should be affirmed in all respects.[4]

## A. Reviewability of Case–Closing Decisions by Commission Staff or Executive Director

ADF & G and the Commission argue that decision of the Commission staff or executive director is not reviewable because the decision (1) is not an "order" under AS 18.80.135, (2) does not constitute final agency action, and (3) is an enforcement decision committed to the Commission's discretion and thus presumptively unreviewable. Each of these arguments fails.

next vacancy in a like accommodation, owned by the person against whom the complaint was filed; the commission may award actual damages which shall include, but not be limited to, the expenses incurred by the complainant for obtaining alternative housing or space; for storage of goods and effects; for moving and for other costs actually incurred as a result of the unlawful practice or violation.

(b) The order may require a report on the manner of compliance.

(c) If the commission finds that a person against whom a complaint was filed has not engaged in the discriminatory conduct alleged in the complaint, it shall issue and cause to be served on the complainant an order dismissing the complaint.

(d) A copy of the order shall be filed in all cases with the attorney general of this state.

(e) The commission may order payment of reasonable expenses, including reasonable attorney fees to any private party before the commission when the commission, in its discretion, determines the allowance is appropriate.

Sec. **18.80.135.** Judicial review and enforcement.

(a) A complainant, or person against whom a complaint is filed or other person aggrieved by an order of the commission, may obtain judicial review of the order in accordance with AS 44.62.560–44.62.570.

4. We review issues of law de novo. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Thus, in

## 1. The decision as an "order" under AS 18.80.135

The State and Commission first argue that a decision issued before a public hearing is not an "order" under AS 18.80.135[5] and is thus not subject to judicial review. The State and Commission cite Hotel & Restaurant Union Local 878 v. Alaska State Comm'n for Human Rights, 595 P.2d 653 (Alaska 1979), in support.

Alaska Statute 18.80.135(a) expressly permits judicial review of "an order of the commission...." Given the structure of the chapter, and the sequence apparently contemplated by AS 18.80.120, .130, and .135, it seems likely that § 135 deals only with review of orders issued by the Commission itself at the conclusion of hearings conducted by the Commission pursuant to § 130. Accordingly, § 135 is not concerned with review of some action by the executive director which is not an "order" as that term is used in Chapter 80. In Hotel and Restaurant

deciding whether judicial review is available and which standard of review to apply, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy. Id. We review questions of law where no agency expertise is involved under the substitution of judgment test. Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992). If the agency has not proceeded in the manner required by law, the agency has abused its discretion. AS 44.62.570(b)(3). No deference is given to the superior court's decision because that court was acting as an intermediate court of appeal. See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co., 746 P.2d 896, 903 (Alaska 1987).

5. We have interpreted the first sentence of AS 44.62.560(e) as allowing a superior court to assert jurisdiction and grant preliminary injunctive relief in cases in which an agency has taken an action which directly and immediately affects the complainant. See Alaska Pub. Util. Co. v. Greater Anchorage Area Borough, 534 P.2d 549, 556–58 (Alaska 1975); A.J. Industries v. Alaska Pub. Serv. Comm'n, 470 P.2d 537, 539 (Alaska 1970). Although we have never interpreted the second sentence of AS 44.62.560(e), in Schnabel v. State, 663 P.2d 960 (Alaska App.1983), the Alaska Court of Appeals stated that the remedy provided by this sentence "is independent of and in addition to Schnabel's right to judicial review of an adverse administrative adjudication." Id. at 966 (dictum) (citing United States v. RCA Alaska Communications, Inc., 597 P.2d 489, 508 (Alaska 1978)).

*Union Local 878,* 595 P.2d at 654–55, we discussed the sequence of events contemplated by §§ 120 and 130. That discussion supports a conclusion that § 135 does not authorize review of a decision of the sort that closed Meyer's case.

Assuming § 135 deals only with review of post-hearing Commission orders, it does not follow that § 135 affirmatively bars judicial review of the order closing Meyer's case. Moreover, all final administrative actions are presumed to be reviewable. This presumption controls unless it is rebutted by an affirmative indication of legislative intent that there be no reviewability. *Johns v. CFEC,* 699 P.2d 334, 339 (Alaska 1985); *Sisters of Providence v. Department of Health & Soc. Servs.,* 648 P.2d 970, 976 (Alaska 1982); *Alyeska Ski Corp. v. Holdsworth,* 426 P.2d 1006, 1011 n. 16 (Alaska 1967). Section 135(a) does not express an affirmative legislative intention that file-closing decisions of the executive director or her staff be judicially unreviewable. We consequently apply the presumption of reviewability, and hold that such decisions are reviewable if they have the requisite finality.

We also reject any suggestion that a decision's reviewability turns on whether it is labeled an "order." As AS 44.62.560(e) confirms, the legislature imposed no such prerequisite for judicial review if agency action is "unlawfully withheld or unreasonably withheld."[6] Rather, as discussed *infra,* the determinative question in deciding whether the decision is reviewable is whether it ended the case at the agency level and thus constituted final agency action.

We also note that when Meyer last sought reconsideration of the executive director's file-closing order, the order of the Commissioner denying reconsideration informed Meyer that "[a] person dissatisfied with a Commission Order dismissing the complaint may obtain judicial review by Superior Court in accordance with AS 44.62.560–44.62.570." It appears the Commissioner then considered that Meyer's order would be judicially reviewable.

2. *The case-closing order as final agency action*

In deciding whether a superior court order possessed the finality essential for appellate review, this court observed that, "[t]he term finality is subject to several definitions." *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408, 411 (Alaska 1973).[7] The test in Alaska for determining whether a judgment is final is "essentially a practical one." *Matanuska Maid, Inc. v. State,* 620 P.2d 182, 184 (Alaska 1980). As the United States Supreme Court recently noted, "[t]he core question [in determining when an agency action is final] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992).

Contrary to ADF & G's assertions, *Ostman v. State Commercial Fisheries Entry Comm'n,* 678 P.2d 1323 (Alaska 1984), does not stand for the proposition that Meyer's ability to file a separate superior court discrimination claim renders the case-closing decision unreviewable.[8] ADF & G notes that we stated in *Ostman* that a final agency determination "must be one which disposes of the entire case ... [or] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." 678 P.2d at 1327 (quoting *Greater Anchorage Area Borough v. City of Anchor-*

---

6. AS 44.62.560(e) provides:
 The superior court may enjoin agency action in excess of constitutional or statutory authority at any stage of an agency proceeding. If agency action is unlawfully withheld or unreasonably withheld, the superior court may compel the agency to initiate action.

7. We noted in *Mukluk* that the United States Supreme Court had stated that, " 'final' in the context of appealability [is] an 'abstruse and infi-

nitely uncertain term.' " *Mukluk,* 516 P.2d at 411, n. 11 (quoting *Will v. United States,* 389 U.S. 90, 108, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (Black, J., concurring)).

8. AS 22.10.020(i) authorizes individuals to bring civil rights actions against the State in superior court. *See Johnson v. Alaska Dept. of Fish and Game,* 836 P.2d 896, 905 (Alaska 1991).

*age,* 504 P.2d 1027, 1030–31 (Alaska 1972)). However, our quoted statement discusses the finality of a *trial court* decision. 504 P.2d at 1030–31. *See also Mukluk Freight Lines,* 516 P.2d at 411. An *agency* determination need not be "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" in order to be ripe for judicial review. Thus, we held in *Ostman* that agency rejection of a fishing permit application constitutes a final order which is reviewable in superior court where there is no more time to submit evidence or alter the decision through administrative means. 678 P.2d at 1326–28. Our holding in *Ostman* is contrary to ADF & G's argument.

Case law from other jurisdictions is conflicting. New York, New Jersey and Iowa have held that Human/Civil Rights Commission dismissals based on no probable cause are judicially reviewable. *See State Div. of Human Rights v. Blanchette,* 73 A.D.2d 820, 423 N.Y.S.2d 745 (1979) (reviewing a Division finding of no probable cause under substantial evidence test); *Sprague v. Glassboro State College,* 161 N.J.Super. 218, 391 A.2d 558, 561 (App.Div.1978) (holding that the Division on Civil Rights did not abuse its discretion in finding no probable cause of discrimination and that the Fourteenth Amendment does not require a hearing before finding "no probable cause"); *Oliver v. Teleprompter Corporation,* 299 N.W.2d 683, 686–87 (Iowa 1980) (holding that a finding of no probable cause is a "final decision" and that the complainant was not limited to a thirty-day period in which to file a petition for judicial review of no probable cause finding).[9]

In *Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392 (D.C.1991), the court held that a determination by the Office of Human Rights that there was no

probable cause to believe that the Human Rights Act had been violated was a final agency action subject to judicial review. *Id.* at 397–99. As ADF & G points out, the District of Columbia court appeared to base its decision in part on the fact that the applicable statute did not authorize a human rights complainant to bring suit on her own behalf if the agency declines or fails to do so for lack of probable cause. 597 A.2d at 398. However, the District of Columbia has since indicated that this distinction is not pertinent. In *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751 (D.C. 1993), the court held that an administrative convenience dismissal (which occurs under District of Columbia law after a finding of probable cause but before a hearing) was subject to judicial review even though the complainant had the right to a trial *de novo* in superior court. *Id.* at 761. Thus, although the court in *Simpson* had indicated that reviewability of an administrative convenience dismissal might depend on whether the complainant had the right to a *de novo* trial, 597 A.2d at 398, *Timus* indicates that judicial review is available in both instances. 633 A.2d at 769 (Ferren, J., concurring).

In *Demetry v. Colorado Civil Rights Comm'n,* 752 P.2d 1070 (Colo.App.1988), the court held that a decision of the Colorado Civil Rights Commission upholding the dismissal of a claim, based on a finding that no probable cause existed to sustain a claim of discrimination on basis of handicap, did not constitute final agency action and was therefore not subject to judicial review. *Id.* at 1072. The court cited federal cases involving claims brought before the Equal Employment Opportunity Commission (EEOC). *Id.* at 1071. The court found the reasoning of

---

**9.** The Commission argues that *Sprague* and a previous Iowa case, *Estabrook v. Iowa Civil Rights Comm'n,* 283 N.W.2d 306 (Iowa 1979), support its assertion that there is no judicial review of no probable cause determinations in these jurisdictions. However, these cases held only that an administrative complainant is not constitutionally entitled to an evidentiary hearing *before* a human rights commission makes a determination of no probable cause. *See Sprague,* 391 A.2d at 561–62; *Estabrook,* 283 N.W.2d at 309–10. As noted above, *Sprague* itself held that a determination of no probable cause is judicially

reviewable. 391 A.2d at 561. The court in *Estabrook* noted that the complainant had only challenged the merits of the commission's finding as not supported by substantial evidence, a standard reserved for "contested cases" (post-hearing cases) under Iowa law. 283 N.W.2d at 311. As *Oliver* indicates, probable cause determinations are judicially reviewable under Iowa law. 299 N.W.2d at 686. Furthermore, Iowa statutory law currently allows explicitly for judicial review of "no-probable-cause decisions and other final agency actions." Iowa Code Ann. § 216.17(1) (West 1994).

those cases—that an EEOC investigation is merely preparatory to further proceedings—persuasive because the complainant can bring a private cause of action in federal court if the EEOC finds no probable cause. *Id* at 1072.

ADF & G also cites EEOC cases for the proposition that the proper response to an agency's determination of no probable cause at the agency level is filing a *de novo* claim in district court rather than seeking review of the agency's adverse determination. The EEOC cases note that Title VII provides no express or implied cause of action against the EEOC to challenge its investigation and processing of a charge, *McCottrell v. EEOC*, 726 F.2d 350, 351 (7th Cir.1984), and that the federal Administrative Procedure Act (APA) provides no right to judicial review of an adverse EEOC determination, *Stewart v. EEOC*, 611 F.2d 679, 683–84 (7th Cir.1979).

Alaska law is similar to federal law in giving the complainant the right to file an original action in superior court. See *supra*, note 4. However, Alaska's statutory anti-discrimination scheme materially differs from the federal scheme. First, Alaska's anti-discrimination statute gives the Commission a more aggressive mandate than that held by the EEOC. "Clearly the legislature intended the Commission to be more than a simple complaint-taking bureau; the statutory scheme constitutes a mandate to the agency to seek out and eradicate discrimination in employment...." *Hotel, Motel, Restaurant, Constr. Camp Employees & Bartenders Union Local 879 v. Thomas*, 551 P.2d 942, 945 (Alaska 1976). Therefore, the limited role of the federal EEOC is of dubious assistance in ascertaining the scope of powers conferred by the Alaska legislature on the Alaska Commission for Human Rights:

> A cursory comparison reveals that the anti-discrimination legislation enacted in Alaska is not substantially similar to comparable federal laws.... Congress limited the adjudicatory and coercive enforcement of the EEOC powers in favor of reliance on private citizen action....

*Id.* at 945.

Second, under Alaska law a hearing is mandatory when the Commission's executive director or designated investigator determines that substantial evidence supports a complainant's allegations and informal efforts to eliminate discrimination fail. AS 18.80.120. In comparison, under federal law the EEOC is only required to use informal methods such as private conference, conciliation and persuasion, and "may" bring a civil action if these efforts fail. 42 U.S.C. § 2000e–5(b), (f).

 Finally, Alaska's APA potentially provides for more expansive judicial review than the federal APA. AS 44.62.560(e). *See* note 5, *supra*. Because the case-closing order was the final action taken by the agency and because the Alaska legislature intended to allow the courts to determine whether an agency's withholding of action is unreasonable or unlawful, the decision of the Commission staff or executive director in this case is ripe for judicial review. AS 44.62.560(e).

3. *The determination as an enforcement decision committed to agency discretion*

 Citing *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and *Vick v. Board of Electrical Examiners*, 626 P.2d 90 (Alaska 1981), ADF & G and the Commission argue that the agency's determination that Meyer's case is not supported by substantial evidence is presumptively unreviewable because that determination is an exercise of prosecutorial discretion. This presumption was first articulated by the Supreme Court in *Heckler*, where the Court reasoned that even where the legislature has expressed no intent to preclude review, review is not available under the federal APA if the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. at 831, 105 S.Ct. at 1655. According to the Court, this presumption helps avoid the problem of how to apply an "abuse of discretion" standard when there are "no judicially manageable standards available for judging how and when an agency should exercise its discretion." *Id.* We reject the argument of ADF & G and the Commission

that the presumption of unreviewability applies here.

In *Vick* the question was whether a board decision not to process an accusation against a licensee was subject to judicial review. We stated concerning this issue: "Questions of law and fact, of policy, of practicality, and of the allocation of an agency's resources all come into play in making such a decision. The weighing of these elements is the very essence of what is meant when one speaks of an agency exercising its discretion." 626 P.2d at 93. We further stated that "[w]hen a matter falls within an area traditionally recognized as within an agency's discretionary power, courts are less inclined to intrude than when the agency has acted in a novel or questionable fashion." *Id.* Unlike *Vick* or *Heckler*, Meyer's case does not involve the exercise of prosecutorial discretion at all. The statute here provides that if the executive director or designated staff member conducting the investigation finds substantial evidence of discrimination, the investigator "shall ... try to eliminate the discrimination complained of by conference, conciliation, and persuasion." AS 18.80.110. If the problem is not eliminated informally, the Commission "shall" conduct a hearing and issue an order at the completion of the hearing. AS 18.80.120, .130(a). Thus, the statute grants no discretion to discontinue the process once the investigator finds substantial evidence of discrimination, unlike the statutes at issue in *Vick* and *Heckler*.[10]

This case is instead closely akin to *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), which the Supreme Court reaffirmed in *Heckler*. The statute at issue in *Dunlop* provided:

> The Secretary [of Labor] shall investigate such complaint [by a union member] and, if he finds probable cause to believe that a violation ... has occurred, ... he shall ... bring a civil action....

421 U.S. at 563 n. 2, 95 S.Ct. at 1855 n. 2. After investigating the complainant's claims, the Secretary of Labor declined to file suit and the complainant sought judicial review under the APA. The Supreme Court held that review was available and that the Secretary's decision not to file suit was *not* "an unreviewable exercise of prosecutorial discretion." *Id.* at 567 n. 7, 95 S.Ct. at 1858 n. 7. The *Heckler* Court stated that in *Dunlop*, "[t]he statute being administered quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power." 470 U.S. at 834, 105 S.Ct. at 1657. The *Heckler* Court thus found *Dunlop* "consistent with a general presumption of unreviewability of decisions not to enforce." *Id.*

In *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392 (D.C.1991), the court held that prosecutorial discretion was not an obstacle to review:

> In the present case, however, OHR was not purporting to exercise "prosecutorial discretion," nor did it reject Ms. Simpson's complaint on the ground that it lacked resources for enforcement. Rather, OHR found that there was no probable cause to believe that the Human Rights Act had been violated. Whether right or wrong, that determination was not one of the kind to which the doctrine embraced by the District can reasonably be applied. We conclude the OHR's determination is subject to judicial review.

*Id.* at 398–99. As Meyer correctly argues, the statute now before us provides no reason to dismiss a case other than a lack of substantial evidence.

ADF & G and the Commission argue that the Commission staff and executive director have wide discretion to determine whether an allegation of discrimination is supported by substantial evidence. ADF & G makes the following argument:

---

**10.** In *Vick*, the complainant conceded that the Board had discretion whether to revoke a license even after it found a regulatory violation. 626 P.2d at 92. Likewise, in *Heckler*, the statute did not require the Food and Drug Administration (FDA) to investigate the unapproved use of an approved drug even when that use became wide-spread or endangered public health. 470 U.S. at 835–36, 105 S.Ct. at 1657–58 (holding statute granted FDA unreviewable discretion to refrain from enforcement despite policy statement stating FDA was obligated to investigate such uses which were widespread or endangered public health).

Whether a violation has occurred, whether the Commission's resources are best spent on one violation or another, whether the Commission is likely to succeed if it acts, whether the particular enforcement action requested best fits the Commission's overall policies, and whether the Commission has enough resources to undertake the action at all are issues that the Commission, and not the courts, should decide. The Commission also argues that these "discretionary issues" are "policy reasons" why this court should find the decision of the Commission staff or executive director to be unreviewable:

> The Commission must have discretion to decide whether to prosecute. The Commission has an important policy interest in the results of each of its investigations because of its role in developing the body of civil rights law in Alaska and because of its statutory obligation to enforce Alaska's civil rights laws. The Commission must employ its limited resources in the most effective manner possible in order to meet these obligations.

The Commission further argues that it will become nothing more than a "complaint taking agency" if it cannot exercise prosecutorial discretion in deciding whether a claim is supported by substantial evidence.

These arguments strongly support judicial review of staff or executive director determinations that there is no substantial evidence. These passages indicate, as the Commission confirmed during oral argument, that the staff or executive director, contrary to statutory mandate, is closing cases not for lack of evidence of discrimination but to control budget and docket. We are sympathetic to the Commission's claim of lack of resources. We recognize that it might be highly desirable for the Commission staff to have the power to administratively dismiss cases which have individual merit but no widespread impact.

However, if the Commission wants its staff to have this discretionary authority, it must be obtained from the legislature, not the judiciary. We cannot import these social, political, and economic concerns into the clear scheme of the existing statute.

An opportunity for judicial review is also necessary because the federal EEOC may, and in some circumstances must, accord substantial weight to findings made by state authorities. 42 U.S.C. § 2000e–5(b); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 470 n. 8, 474–75, 102 S.Ct. 1883, 1892 n. 8, 1893–94, 72 L.Ed.2d 262 (1982); *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838 (10th Cir.1979).[11] Furthermore, such findings may affect workers' perceptions of potential employers and vice versa.[12] Finally, as noted above, Alaska's anti-discrimination statutory scheme is a mandate to seek out and eradicate discrimination in employment, and did not simply create a complaint-taking agency. *Hotel, Motel, Restaurant, Constr. Camp Employees & Bartenders Union Local 879 v. Thomas*, 551 P.2d 942, 945 (Alaska 1976). A human rights complainant in Alaska has the statutory right to expect that his or her claim will be decided on the merits, not pre-determined by budgetary constraints.

### B. The Finding of No Substantial Evidence

 Under Alaska and federal law, a court generally applies a three-part test in determining whether discriminatory treatment has occurred. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *Thomas v. Anchorage Telephone Utility*, 741 P.2d 618, 622 (Alaska 1987). In the first stage, the employee claiming discrimination must introduce evidence raising an inference of employer discriminatory intent.[13] Once the employee has established

---

**11.** The EEOC may not consider a claim until a state agency having jurisdiction over employment discrimination has been given at least sixty days to resolve the matter. 42 U.S.C. § 2000e–5(c).

**12.** Thus, if the complaint was valid, a finding of no substantial evidence may give a "false nega-

tive" signal to persons seeking positions with that employer. It may also place the unsuccessful complainant in a bad light when he or she seeks employment elsewhere.

**13.** This inference is usually accomplished by establishing a prima facie case using the four-part test articulated in *McDonnell Douglas Corp. v.*

this prima facie case of disparate treatment, the burden rests with the employer to articulate a legitimate, non-discriminatory reason, supported by evidence, for the treatment. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094; *Thomas*, 741 P.2d at 623–24. If the employer establishes a legitimate reason for its actions, the burden shifts back to the employee to persuade the court that discriminatory reasons more likely motivated the employer. Usually the employee satisfies this burden by showing that the employer's explanation is pretextual. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Thomas*, 741 P.2d at 622.

In determining that there was no substantial evidence at the investigative stage, the Commission staff and executive director applied the three-part *Burdine/Thomas* test, concluding that ADF & G had rebutted Meyer's prima facie case of discrimination and that Meyer had failed to show that ADF & G's proffered reasons were pretextual. In the first case-closing decision, the Commission's investigator stated:

According to the principles of discrimination law, complainant must first establish a *prima facie* case, that is, a set of facts which raises an inference of sex discrimi-

nation, before respondent can be required to justify its actions.... Evidence showed that complainant has established a *prima facie* case.... Once complainant has established a prima facie case, the burden shifts to respondent to provide a legitimate non-discriminatory reason for denying complainant the employment extensions.

The investigator concluded:

I therefore determine that ... respondent's defenses to complainant's *prima facie* case are legitimate and nondiscriminatory and that complainant has failed to rebut respondent's legitimate nondiscriminatory reasons.

The decision upon reconsideration affirmed this determination.

■ It was an error of law for the staff or executive director to resolve at the investigative stage the legitimacy of ADF & G's non-discriminatory reasons and Meyer's success in rebutting those reasons. By offering objective evidence of facts which established a prima facie case of discrimination and which raised a genuine dispute about ADF & G's explanation of its decisions, Meyer established substantial evidence of discrimination under AS 18.80.110 sufficient to warrant a hearing under AS 18.80.120.[14] Although

---

*Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (prima facie case established by showing: (1) complainant belongs to a racial minority; (2) complainant applied for and was qualified for a job for which employer was seeking applicants; (3) despite qualifications, complainant was rejected; and (4) after rejection, the position remained open and employer continued to seek applications from similarly qualified persons). However, the *McDonnell Douglas* test is not the only means by which a claimant may raise an inference of discrimination. *Haroldsen v. Omni Enterprises, Inc.*, 901 P.2d 426 (Alaska 1995). *Strand v. Petersburg Pub. Schools*, 659 P.2d 1218, 1222 n. 7 (Alaska 1983) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13).

14. The determination that Meyer established a prima facie case was clearly correct. As stated by the Commission's investigator:

Evidence showed that complainant is a member of a protected class; that respondent denied her extensions/job assignments in her employment as [FBI] on four separate occasions during 1985 and 1986; and that respondent awarded the extensions/assignments to male FBI's.... Investigation showed that com-

plainant was qualified for these extended assignments.

Further, Meyer raised a genuine dispute regarding ADF & G's employment decisions. ADF & G argued that the male employees it chose for work extensions were the most qualified for the positions they were given. Meyer offered evidence that at least some of the male employees chosen were not more qualified, that her writing skills were superior to the male applicants chosen to complete written projects, and that if male fish biologists had greater job capabilities, it was a result of a supervisor's consistent efforts to enhance the qualifications of male biologists while making no corresponding effort to enhance the job skills of female biologists.

Meyer alleged that recipients of "unstructured positions" were always male and always more likely to be promoted or receive extensions. There was evidence that Supervisor Dave Nelson decided who assumed the duty of census creel clerk and who would be put in the "unstructured position." Shortly after the Commission closed Meyer's case the second time, a male FBI who had previously been in the unstructured position was promoted to FBII.

Nelson denied that there was a pattern of "grooming" male fish biologists for promotion.

ADF & G asserted non-discriminatory reasons for offering job extensions and increased responsibility to male employees rather than Meyer, the ADF & G evidence discussed by the Commission staff was insufficient to demonstrate that Meyer's claims were completely lacking in merit, or that a fact finder would be compelled to find for ADF & G.[15] Consequently, the staff and executive director could not determine whether discrimination had occurred without resolving the factual disputes between the two parties. These disputes could not be resolved without a hearing.

■ The burden required to compel a hearing is less than the burden required to prevail on the merits at the hearing's conclusion. This distinction is appropriate because of the structural differences between the unilateral investigation conducted by Commission investigators and formal adversarial proceedings before the full Commission. Unlike an adversarial proceeding in which a party has the opportunity to rebut the other's proffered evidence, an investigation by an administrative agency "represents a unilateral inquiry into the facts which are in the possession of the employee and the employer." 10 Marlin M. Volz et al., *West's Federal Practice Manual* § 15,919, at 488 (2d ed. 1970). Thus, at the investigative stage, neither party may conduct discovery. 6 Alaska Administrative Code 30.320(c) (1995). Without access to discovery, in many cases it would be difficult or impossible for a complainant to prove that an employer's proffered reasons are pretextual. Consequently, a staff or executive director finding of no substantial evidence cannot be based on the fact that a complainant "failed" to meet the three-part *Burdine/Thomas* test at the investigative stage. Nor should the staff or executive

director attempt to determine at the investigative stage whether the non-discriminatory reasons proffered by the employer are legitimate. The Commission cannot adequately resolve factual disputes if the parties have not been given the opportunity to conduct discovery or cross-examine opposing witnesses.

Other courts have generally not examined what showing must be made to warrant a hearing under similar anti-discrimination statutory programs. However, another jurisdiction which has considered this issue has reached a similar conclusion. New Jersey has defined probable cause (the functional equivalent of "substantial evidence" as that phrase is used in AS 18.80.110) as a "reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious [person] in the belief that the law is being violated." *Sprague v. Glassboro State College*, 161 N.J.Super. 218, 391 A.2d 558, 561 (1978) (quoting *People v. Marshall*, 13 N.Y.2d 28, 241 N.Y.S.2d 417, 420, 191 N.E.2d 798, 801 (1963)). In expounding on this definition, another court subsequently stated:

> Much the same way as in the administration of criminal justice and probable cause for Fourth Amendment purposes, a proceeding to determine the existence of probable cause [in the discrimination context] is not an adjudication on the merits. Rather, it is an initial threshold procedure to determine whether the matter should be brought to a halt or proceed to the next step on the road to an adjudication on the merits. The quantum of evidence required to establish probable cause is less than that required by a complainant in order to prevail on the merits.... *When deciding probable cause, the Director was not per-*

---

**15.** Further, even without the benefit of discovery, Meyer offered evidence that could support findings that ADF & G's explanations were pretextual. For example, as of 1987, there were four women in the Division, all of whom were FBI's, and sixty-two males, holding positions of FBI through FBIV; in comparison, there had been a significantly higher percentage of women in the applicant pool of ADF & G registers for FBI and FBII positions than was reflected by the number of women holding those positions. This court has held that once a prima facie case of discrimi-

nation is established, statistical evidence of a discriminatory pattern "is to be viewed as evidence that the non-discriminatory justification given by the defendant is in fact a pretext." *Brown v. Wood*, 575 P.2d 760, 770 (Alaska 1978).

Moreover, the skills which Nelson stated the male FBI's exhibit, such as using tools, were not listed in the job description for fish biologists. Rather, these skills were listed in the job description for fish technicians, a different and less advanced position.

*mitted to resolve disputed facts. The Director was not concerned with whether the information collected during the investigation was true or false-only whether it was reasonable to accept it as true and if so whether it justified consideration on the merits.* A common sense, practical and nontechnical standard is required for the probable cause determination.

*Frank v. Ivy Club,* 228 N.J.Super. 40, 548 A.2d 1142, 1150 (App.Div.1988) (citations omitted) (emphasis added), *rev'd on other grounds,* 120 N.J. 73, 576 A.2d 241 (1990), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). *See also New York State Div. for Youth v. State Human Rights Appeal Bd.,* 83 A.D.2d 972, 442 N.Y.S.2d 813, 814 (1981) (where there is no full investigation with opportunity for confrontation, the complaint must lack merit as a matter of law in order for division to dismiss complaint).

■ As noted above, the Commission staff determined that Meyer established a prima facie case of discrimination. This determination was correct. ADF & G does not claim that it was error to determine that Meyer established a prima facie case of discrimination. Instead ADF & G argues that substantial evidence under AS 44.62.570 supported the decision to close Meyer's case and that the superior court erred in reweighing the evidence considered by the staff and director. The deferential standard of review on which ADF & G relies has no bearing in this case, because the staff and executive director incorrectly applied the *Burdine/Thomas* test at the investigative stage and the Commission never conducted the hearing mandated by statute. This error was one of law, to which we apply our independent judgment. *See supra,* note 3.[16]

## IV. CONCLUSION

The decision to close Meyer's case is judicially reviewable. We AFFIRM the superior court's decision and REMAND to the superior court for the purpose of remanding this case to the Commission with directions to proceed with Meyer's complaint in accordance with AS 18.80.110–.120.

---

16. The parties dispute the proper standard of review to be applied to a staff or executive director factual determination of no substantial evidence under AS 18.80.110. Because we hold the error was one of law, it is unnecessary to resolve this issue in this case.