Eugene VICK, Appellant,

v.

**BOARD OF ELECTRICAL EXAMINERS, Appellees.**

No. 4863.

Supreme Court of Alaska.

April 3, 1981.

Pamela Finley and J. P. Tangen, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Bruce M. Botelho, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellees.

Ronald W. Lorensen, Josephson, Trickey & Lorensen, Inc., Juneau, for amicus curiae, Ken Williamson.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

The central question in this case is whether an administrative agency properly refused to commence a license revocation proceeding against an electrical contractor.

At the times relevant to this case, the licensing of electrical administrators, i. e., contractors, was the responsibility of the Board of Electrical Examiners (the "board") and the Division of Occupational Licensing (the "division"), which are both agencies of the Department of Commerce and Economic Development. The board passes upon the qualification of applicants, adopts regulations, and disciplines licensees. AS 08.40.050, .060, .170. The division performs administrative services for the board, such as processing applications. AS 08.01.-070. It also investigates complaints against licensees, AS 08.01.087(a), and has the responsibility of initiating disciplinary proceedings before the board. AS 08.40.-050, .170, AS 44.62.360.

In December of 1976, Ken Williamson applied for an electrical administrator's license. He sat for several examinations in 1977, and by November of 1977 had qualified to do both outside and inside wiring. He was issued the appropriate license.

Before July 28, 1977, the board had no definite regulations concerning the previous experience necessary to qualify as a licensee, but on that date new regulations became effective which required certain experience as a prerequisite to licensure.

On December 6, 1977, Eugene Vick, a licensed electrical administrator, advised the board through his attorney that, in his view, Williamson was not qualified, by reason of previous experience, to take the examinations by which he had become licensed. On December 23, 1977, the director of the division responded that in her belief the board had properly licensed Williamson. She noted that the board had decided not to apply the experience requirements retroactively to persons who had applied for licensing before those new regulations became effective in July of 1977. Additionally, the director referred the matter to the Department of Law for review. In early February of 1978 she stated that after consulting an assistant attorney general, it was her recommendation that no action be taken.

At its meeting in February of 1978, the board was presented with additional information, consisting of Mr. Williamson's application in 1972 for apprenticeship in the electrical trade. Apparently it was contended that there were discrepancies between the experience claimed in the 1972 apprenticeship application, and the experience claimed in the 1976 application to the Alaska board, as to work done for Rockwell Concrete in Denver, Colorado.[1] The board

1. In the apprenticeship application dated September 15, 1972, Williamson was asked to list his present employer and one previous employer. In the two blank spaces provided he wrote,

determined that the experience prerequisites for licensing established in 1977 should not be applied retroactively to Mr. Williamson or any other applicant who had applied before the new regulations became effective. The board referred the question of any discrepancies in Mr. Williamson's licensing applications to the division of occupational licensing. It appears that an assistant attorney general and the director of the division concluded that the discrepancies were insufficient to sustain a disciplinary action on the basis of fraud, and the board was so advised by a memorandum from the director of the division on March 16, 1978.

On May 12, 1978, Mr. Vick filed a written accusation against Mr. Williamson before the board, claiming that Williamson's application contained "misleading and fraudulent statements and claims," that he lacked the personal skill and ability for licensing, and that the license should be revoked.

In June of 1978, the director of the division wrote to Mr. Vick's attorney, stating the position of the division that a third party may not file and prosecute a disciplinary action, and that only the agency may commence such a proceeding. Thereafter, Mr. Vick brought an action in superior court, asking the court to order the board to process his accusation or, alternatively, to order the board to make its own accusation and process it. The court granted summary judgment to the state, and Vick appeals.

The issues are (1) whether there should be judicial review of the division's decision recommending that the board not process the accusation against Mr. Williamson, and (2) whether a member of the public can compel the board to file an accusation.[2]

I

Vick concedes at the outset that the final decision to revoke or suspend a license lies within the discretion of the board, but argues that agency discretion is reviewable to determine whether it has been exercised in an arbitrary, capricious, or corrupt manner, citing *Moore v. State*, 553 P.2d 8, 36, n.20 (Alaska 1976). Further, Vick contends that judicial review should extend to review of an agency's prosecuting power, in this case the decision not to commence a license revocation proceeding.

In support of his position Vick relies on a number of cases relating to judicial review of agency discretion, but only a few apply to review of the use of the prosecuting power.[3] In *Spear v. Board of Medical Ex-*

---

"haven't been working approx. 3 wks," and "Rockwell Concrete, 6540 W. Union; Denver, Colo.," and under the latter wrote in, "3 mos. diesel mechanic." On another page he listed "Rockwell Concrete" and "mechanic" on his employment history, but gave no dates of employment.

In the 1976 application to the Alaska board, under experience record, Williamson listed work for Rockwell Concrete as a "plant electrician" from "12–7]" to "12–72" (sic).

It is not clear from the record on appeal who presented the information to the board at its meeting in February of 1978. The board chairman, Jerome Trammer, in an affidavit says that the International Brotherhood of Electrical Workers and the National Electrical Contractors Association raised "a considerable amount of controversy" about the matter, but in reference to the meeting merely says that the board "was presented" with copies of the apprenticeship application. Appellant's brief says that "a member of the National Electrical Contractor's Association" presented a copy of the apprenticeship application at the meeting.

**2.** Filing an accusation begins the proceeding to revoke, suspend, limit or condition a license. AS 44.62.360.

**3.** In *DeVito v. Shultz*, 300 F.Supp. 381 (D.D.C. 1969), the plaintiffs sought to have the Secretary of Labor set aside a union election, but were not concerned with the prosecuting power of the Secretary. The Secretary decided not to act in the matter, which was within his jurisdiction, even though some election irregularities were admitted in a letter he sent to the complainants. The court held that in order to determine whether the Secretary exercised his discretion consistently with the underlying law, and not arbitrarily, it would require the Secretary to give a more ample written explanation of his inaction. The court could reasonably require re-examination and a more complete explanation because the Secretary was required by 29 C.F.R. § 101.6 to provide the plaintiffs with a statement of reasons for not acting on the complaint. In *City Employees Local 660 v. County of Los Angeles*, 33 Cal. App.3d 1, 108 Cal.Rptr. 625 (Cal.App.1973), the issue was whether "caseloads" fell within the

*aminers,* 303 P.2d 886, 890 (Cal.App.1956), the plaintiff sought to force a medical board to file an accusation against a physician. The court held that the board was required only to consider the plaintiff's request that an accusation be filed. The board, in its discretion, could determine whether to file the accusation and the court could not compel a particular decision. In the case at bar, the division did consider the plaintiff's request. Dictum in *Humane Society v. Merrill,* 199 Cal.2d 115, 18 Cal.Rptr. 701, 704 (Cal.App.1962), states that if a board does not act upon a complaint, the complainant may file an accusation; but as dictum this is weak authority for appellant's position.

In *Leitman v. State Bar Grievance Board,* 387 Mich. 596, 198 N.W.2d 313, 317 (Mich. 1972), a grievance proceeding against an attorney was dismissed administratively. The court held that there was an appeal of right from the grievance board's decision not to convene a hearing on the charges made, but central to the decision was the state supreme court's unique responsibility to discipline attorneys.

◼ Judicial review of administrative discretion is a subject about which it is most difficult to generalize. We have held that even in the absence of a statute permitting review, we will sometimes inquire into the basis of an agency's decision to assure that it is in conformity with law and that it is not so capricious or arbitrary as to offend due process. *K & L Distributors, Inc. v. Murkowski,* 486 P.2d 351, 358 (Alaska 1971). But the extent of judicial review of discretionary determinations of an agency must necessarily vary with the subject matter. When a matter falls within an area traditionally recognized as within an agency's discretionary power, courts are less inclined to intrude than when the agency has acted in a novel or questionable fashion.

When an agency functions to protect the public in general, as contrasted with providing a forum for the determination of private disputes, the agency normally exercises its discretion in deciding whether formal proceedings should be commenced. In matters of occupational licensure the decision to initiate proceedings for revocation or suspension is comparable to the function of a public prosecutor in deciding whether to file a complaint.[4] Questions of law and fact, of policy, of practicality, and of the allocation of an agency's resources all come into play in making such a decision. The weighing of these elements is the very essence of what is meant when one speaks of an agency exercising its discretion.

◼ Vick complains that the agency failed to launch a searching investigation of Williamson's background and work experience, and that this failure amounts to arbitrary and capricious action on the part of the agency. It appears, however, that the board concluded that the results of such an investigation would be immaterial because the board would not apply its experience requirements retroactively. Therefore, such an investigation would not lead to a revocation proceeding in any event. As to the fraud claim, the board considered the apparent discrepancies in Williamson's application insufficient to require the initiation of a disciplinary proceeding. The agency exercised its discretion in conceding the discrepancies and deciding to forego the filing of the accusation. Thus, we conclude that the board and the division did consider the matters put before them and that no abuse of discretion has been demonstrated. It follows that the superior court ruled correctly on this question.

## II

◼ We now address the question of whether a member of the public can compel

statutory boundaries of negotiable matters in collective bargaining.

4. Prosecuting power includes not only criminal prosecution, but also civil proceedings such as license suspension and revocation. Davis, *Administrative Law Text,* § 4.09 at 110 (1972).

The analogy to public prosecution is broad, but not precise. But in many instances the consequences to the licensee can be more serious than those which would result from a criminal prosecution, depending, of course, upon the particular setting.

agency action by filing an accusation before the agency. Appellant concedes that the weight of authority is against his position. But he argues that the administrative procedure act, AS 44.62.360(3), which requires that an accusation be verified unless it is made by a public officer, implies that accusations can be filed by other than agency personnel. Most courts hold that unless the statute governing the particular agency expressly permits third parties to initiate disciplinary proceedings, such authority is not implied. *See, e. g., Spear v. Board of Medical Examiners,* 146 Cal.App.2d 207, 303 P.2d 886, 890 (Cal.App.1956); *Berman v. Board of Registration in Medicine,* 355 Mass. 358, 244 N.E.2d 553, 554–55 (Mass.1969). But appellant argues that section 360 of the administrative procedure act, which requires that an accusation be verified unless it is made by a public officer, implies that accusations can be filed by other than agency personnel.[5]

Vick supports his argument with citations to Professor Davis, Administrative Law Text, § 4.09 at 111 (1971), and Administrative Law Treatise, § 28.16 at 982–83 (1970 Supp.); and Professor Jaffe, "The Individual Right to Initiate Administrative Process," 25 Iowa L.Rev. 485, 528–29 (1940), that members of the public should be able to compel agency action when the agency is exercising its discretionary prosecuting power. In his long review of the subject, Professor Davis argues for a "middle position" between complete unreviewability and total judicial intrusion into discretionary administrative action. But the net result would be a vast increase in reviewability. Davis, Administrative Law Treatise, § 28.16

at 964–80 (1970 Supp.). Although Professor Jaffe supports review of the prosecuting power when the discretionary decision in question denies a party the ability to enforce a right unique to that party, *see* Jaffe, "The Individual Right to Initiate Administrative Process," *supra,* at 528–29, he generally does not support such review:

> "An agency entrusted with grandiosely stated responsibilities and far-reaching powers can only realize a modest measure of its potential. It must ration its limited resources of time, energy and money. It must devote them to those exigent and soluble problems which are more nearly related to its core responsibility. What problems *are* most exigent, how they can best be solved—and by implication, which problems must be put aside or left to other agencies—are questions the solution to which peculiarly demands a feeling for the whole situation.

> . . . . .

> [I] conclude that in the absence of a clear legal prescription, a reasonable procedural decision should withstand judicial interference." (emphasis in the original).

Jaffe, Judicial Control of Administrative Action 567 (abridged ed. 1965).

The arguments of Professor Davis espouse a certain philosophic position as to what the scope of judicial review of the prosecuting power should be. But to accept them uncritically might lead to untoward results. First, there is the sheer impracticality of such an endeavor. Thousands of discretionary decisions must be made daily by officials of the executive branch. Many of these decisions are made in advance of

5. AS 44.62.360 provides in part:
"The accusation shall . . . (3) be verified, unless made by a public officer acting in his official capacity or by an employee of the agency on whose behalf the proceeding is to be held . . . ."
Vick argues that the phrase "unless made by a public officer . . . or by an employee of the agency," is superfluous unless the legislature intended that individuals other than public officers and agency employees be able to file an accusation. *See City and Borough of Juneau v. Thibodeau,* 595 P.2d 626, 634 (Alaska 1979). AS 44.62 contains the codification of the Ad-

ministrative Procedure Act, by which the legislature adopted a general set of administrative procedure statutes. When reading AS 44.62.-360(3) with AS 44.62.330(d)(4), it becomes clear that the "unless" language in the former provides a means by which administrative agencies themselves may choose to permit a private individual to file an accusation. Vick was not allowed to participate by administrative ruling; further, the words in AS 44.62.-360(3) are not superfluous, even though private individuals are not permitted to file accusations.

taking formal government action affecting legal rights. Numerous executive decisions must be made on whether to initiate criminal proceedings, whether to bring civil actions, and whether to commence administrative proceedings. If these were invariably made subject to judicial review at the instance of a person who disagreed with the official's decision, the increased burden on public officials and the courts would be enormous.

Second, it is questionable whether the net gain from making such decisions reviewable would outweigh the significant disadvantages which would be entailed. There is no assurance that superimposing the discretion of a judge on the discretion of the administrator would necessarily lead to better results in other than a few instances. Judicial intrusion into areas traditionally committed to executive discretion would make the processes of government more cumbersome and less efficient. In the absence of obvious and compelling reasons, that is a result which should be avoided.

To permit a private party, regardless of his basis, to force an agency to initiate a formal proceeding—and presumably to carry it through to its last conceivable phase—would be quite wasteful of government resources. No doubt it is reasons such as these that have led the courts to be so cautious about intruding into areas traditionally believed to be within the discretion of administrative officers.[6]

There may, of course, be extreme situations where an agency withholds action so unreasonably that it amounts to arbitrary and capricious behavior, requiring judicial intervention. We will consider such cases when and if they emerge. Here, however, the agency has acted within its jurisdictional boundaries, and has exercised the discretion which was committed to it by the legislature. No persuasive reason has been advanced for judicial intervention into the agency's discretionary determination.

 In light of the public policy reasons discussed above, and in the absence of strong authority to the contrary, we are most reluctant to imply the legal power of a private citizen to compel agency action by the filing of an accusation.

We hold that the agency was not obliged to accept and process the accusation which was filed before it.

AFFIRMED.

---

6. Tradition in this instance is not necessarily a dead hand. Rather, it represents an understanding, not always articulated, of the practical limits of judicial action. It is simply not possible for courts to review every discretionary decision made by executive branch officials charged with the enforcement of the laws. There is a large sphere of executive branch action which is neither quasi-legislative nor quasi-judicial in nature. Unfortunately, lawyers and judges, trained as they are to think in terms of adversary proceedings, sometimes employ the analytical tools of administrative law in dealing with executive branch activity which, realistically, is merely executive action with few, if any, of the characteristics of matters which are within judicial competence.