*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRANT MCGEE, | ) | |
| | ) | Supreme Court No. S-15636 |
| Petitioner, | ) | |
| | ) | ABA File No. 2013D160 |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA BAR ASSOCIATION, | ) | |
| | ) | No. 7023 – July 24, 2015 |
| Respondent. | ) | |
| | ) | |

Original Application from a decision by Bar Counsel for the Alaska Bar Association.

Appearances: Brant McGee, pro se, Anchorage, Petitioner.[1] Louise R. Driscoll, Assistant Bar Counsel, Alaska Bar Association, Anchorage, for Respondent.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

When an ethics grievance against a lawyer is filed with the Alaska Bar Association, Bar Counsel may, after a preliminary review, determine that a formal investigation is unwarranted and close the file. The complainant may request that the decision be reviewed by the Bar's Discipline Liaison — designated by the Bar's Board

---

[1] McGee is an inactive member of the Alaska Bar Association.

of Governors — and if the Discipline Liaison agrees with Bar Counsel, then no further action is taken and the matter is closed. In *Anderson v. Alaska Bar Ass'n* we held that we will directly review a grievance-closing decision.[2] In that case we reviewed the grievance closure for abuse of discretion and concluded that Bar Counsel had not abused his discretion in determining that a formal investigation was unwarranted.[3]

We now consider a complainant's application for relief contending that Bar Counsel erred in closing the complainant's grievance without a formal investigation. Resolving this matter requires explaining more fully how we review a grievance closure. First, we expect Bar Counsel will base a grievance closure on the facts of record, applicable law and policy, practicality, and professional experience and judgment; when Bar Counsel does so we will afford Bar Counsel broad discretion. Second, when reviewing a grievance-closing decision for abuse of discretion, we look to ensure that the decision is not arbitrary, capricious, or the result of a breakdown in the process. On that standard we see no abuse of discretion in Bar Counsel's decision to close this complainant's grievance without a formal investigation.

## II.    DISCUSSION

### A.    Legal Framework

Former Alaska Bar Rule 22(a) implied that if a properly filed grievance contained "allegations which, if true, would constitute grounds for discipline" Bar Counsel was required to open a formal investigation.[4] Bar Rule 22(c) provided that after

---

[2]    91 P.3d 271, 272 (Alaska 2004).

[3]    *Id.*

[4]    Former Alaska Bar R. 22(a) (Jan. 1985); Alaska Supreme Court Order No. 614 (Dec. 6, 1984).

a formal investigation had been opened, Bar Counsel could dismiss the grievance if "there is no probable cause to believe that misconduct has occurred."[5]

We amended Rule 22(a) in 2003 to confirm Bar Counsel's prosecutorial discretion when deciding whether to open a formal investigation, and Rule 22(a) now requires Bar Counsel to open a formal investigation only when a properly filed grievance "contains allegations that warrant investigation."[6] But we also added a provision that a complainant could request review of Bar Counsel's grievance-closing decision by the Bar's Discipline Liaison, who could direct that a formal investigation be opened on one or more of the grievance allegations.[7] We did not change Rule 22(c)'s language.[8]

In *Anderson v. Alaska Bar Ass'n* we held that there was no right to appeal grievance-closing decisions to the superior court, but that based on "the presumption of reviewability pertaining to all final administrative orders, and the inherent authority of this court to regulate the practice of law," we would directly review such decisions.[9] Citing but not discussing *Vick v. Board of Electrical Examiners*, we stated our "review should be deferential, namely, whether bar counsel abused his or her discretion in

---

[5] Alaska Bar R. 22(c) (Jan. 1985); Alaska Supreme Court Order No. 614 (Dec. 6, 1984).

[6] Alaska Bar R. 22(a); Alaska Supreme Court Order No. 1454 (July 23, 2003).

[7] Alaska Bar R. 22(a); Alaska Supreme Court Order No. 1454 (July 23, 2003); *see also* Alaska Bar R. 10(f) (regarding appointment and duties of the Discipline Liaison).

[8] *See* Alaska Supreme Court Order No. 1454 (July 23, 2003) (amending only Alaska Bar R. 22(a)).

[9] 91 P.3d 271, 272 (Alaska 2004).

determining that the allegations contained in the grievance do not warrant an investigation."[10]

In the cited portion of *Vick* we had stated:

> When an agency functions to protect the public in general, as contrasted with providing a forum for the determination of private disputes, the agency normally exercises its discretion in deciding whether formal proceedings should be commenced. In matters of occupational licensure the decision to initiate proceedings for revocation or suspension is comparable to the function of a public prosecutor in deciding whether to file a complaint.[4] Questions of law and fact, of policy, of practicality, and of the allocation of an agency's resources all come into play in making such a decision. The weighing of these elements is the very essence of what is meant when one speaks of an agency exercising its discretion.
>
> _____
>
> [4] Prosecuting power includes not only criminal prosecution, but also civil proceedings such as license suspension and revocation. DAVIS, ADMINISTRATIVE LAW TEXT, § 4.09 at 110 (1972). The analogy to public prosecution is broad, but not precise. But in many instances the consequences to the licensee can be more serious than those which would result from a criminal prosecution, depending, of course, upon the particular setting.[11]

Assuming that a grievance has been processed in accordance with applicable rules and procedures, the *Vick* analysis applies.

We expect that when considering whether a grievance warrants a formal investigation, Bar Counsel will consider the following: the known facts; whether

---

[10] *Id.* (citing *Vick v. Bd. of Elec. Exam'rs*, 626 P.2d 90, 93 (Alaska 1981)).

[11] 626 P.2d at 93.

additional material facts reasonably could be brought to light with a formal investigation; applicable law and policy; and the practicality of pursuing a grievance in light of the need to prove an ethical violation by clear and convincing evidence,[12] including relevant allocations of resources.[13] We further expect that Bar Counsel will apply experience and professional judgment when weighing these various considerations in a grievance-closing decision. When Bar Counsel does this, we will afford broad discretion in making that decision. We will conclude there is an abuse of discretion only if, based on the record and the reasoning expressed by Bar Counsel, the decision is arbitrary and capricious or it is clear the grievance process has broken down.

## B. McGee's Grievance And Application For Relief

Brant McGee filed a grievance with the Alaska Bar Association against an attorney in the Office of Public Advocacy (OPA).[14] The grievance arose from an ongoing dispute between McGee and OPA about OPA's former contracts with a private criminal defense investigator. McGee has contended the contracting process was corrupt, the investigator is a demonstrated liar, and OPA nonetheless wrongfully continued using the investigator. He also has contended that OPA attorneys, including

---

[12] *See* Alaska Bar R. 22(e) ("Bar Counsel will have the burden at any hearing of demonstrating by clear and convincing evidence that the Respondent has, by act or omission, committed misconduct [that is grounds for discipline].").

[13] We do not suggest that an otherwise meritorious grievance should not be formally investigated based solely on an asserted lack of resources.

[14] OPA provides legal representation at public expense in a variety of contexts. AS 44.21.400-.410. Among other duties, OPA represents indigent criminal defendants when the Public Defender Agency has a conflict of interest, provides legal representation to indigent respondents in guardianship proceedings, and provides legal representation and guardian ad litem services to children in both custody and child in need of aid cases; it also serves in the role of public guardian. AS 44.21.410(a).

some in administrative and supervising positions within the agency, were guilty of ethical violations either during the contracting process or when allowing the investigator to continue working for OPA when he might be impeached devastatingly at trial to OPA clients' detriment. McGee's concerns previously led to proceedings described below and to Bar Counsel's consideration of five other grievances against OPA attorneys.[15]

In March 2012 an Administrative Law Judge (ALJ) issued a 14-page decision that OPA's 2011 request for investigator proposals had been unduly restrictive and there was at least an appearance that the ultimate contract winner, the then-current investigator, had been favored. (In the matter before the ALJ, McGee represented an investigator who did not meet the qualifications in the request for proposal.) The ALJ remedially ordered that the contract not be renewed in June 2012; the ALJ also ordered the Department of Administration's Chief Procurement Officer to investigate an earlier 2006 contract with the investigator to determine whether corrective administrative action or a referral to the Department of Law was necessary.

In November 2012, in response to the ALJ's order and McGee's follow-up demand that OPA's former investigator be barred from future contracts, the Chief Procurement Officer issued a 14-page report. He concluded that although there had been problems with OPA's contracting process, McGee's allegations about the investigator were mostly untrue and those that were true did not rise to the level that debarment was appropriate.

After McGee's subsequent 16-page letter to the Department's Commissioner contradicting the Chief Procurement Officer's report and describing it as a "whitewash," the Department of Law responded with a 14-page letter in April 2013.

---

[15]    These grievances were closed without formal investigations. Our review of these grievance closures was not sought.

It reiterated that although there were some longstanding systemic problems in OPA's contracting process, no knowing or intentional procurement violations had been uncovered in the investigation and no civil or criminal penalties would be pursued against OPA employees or the investigator.

Later in 2013 McGee filed the Bar grievance that is the basis of his application for relief. In a May 2014 letter Bar Counsel advised McGee that a formal investigation would not be opened, stating in relevant part:

> You alleged that [the OPA attorney] violated a series of rules dealing with a lawyer's duties to his client. These alleged violations resulted from allowing [the investigator] to provide investigative services to OPA criminal defense staff and OPA contract attorneys. You alleged that [the investigator] obtained a contract to provide investigative services through a flawed bidding process because [the investigator] misrepresented his investigative experience and training when he responded to a request for proposal. After contracting for services, [the investigator] submitted time sheets that you believe misrepresented time he actually spent in performance of services for OPA. You alleged that his mendacity makes [the investigator] a target for devastating cross examination and impeachment.

> . . . .

> [The attorney] did not create the request for proposal or enter into the OPA contract with [the investigator] in 2006. At most, he inherited a problem that you identified. [He] sought to remedy the problem when he suspended the use of [the investigator's] services during the investigation. But [he] did not create the problem with which defense counsel may have to grapple. . . .

> . . . .

> A lawyer's duties to clients encompass the duties to preserve client property, preserve client confidences, avoid conflicts of interest, act with reasonable diligence and

promptness in representing a client, provide competent representation, and act with candor. Issues of [the investigator's] candor based on his resume and questionable time sheets do not warrant opening an investigation into whether [the OPA attorney] has breached duties to OPA clients.

. . . .

. . . I cannot justify opening a grievance for investigation of [this attorney] on the basis of your speculation that . . . OPA could utilize [the investigator's] services.

[The investigator's] contract as an OPA investigator has been the subject of an administrative hearing, a Department of Administration investigation, a Department of Law investigation and several grievances. [The investigator] no longer has a contract with OPA. If this case were to go to hearing, in my opinion, we would not meet our burden [of] proof in order to show a violation of rules of professional conduct. The disciplinary process is time-consuming, and at the hearing and Disciplinary Board stages it relies on volunteer labor. It has always been our policy to decline prosecution of cases in which we believe that we could not meet our burden of proof at hearing. Under the fairly unique and complicated circumstances of this case, a hearing committee could not reasonably conclude that [this attorney] breached ethical rules of conduct.

McGee requested that the Discipline Liaison review the grievance-closing decision, and provided the Discipline Liaison another 11 pages of argument. The Discipline Liaison concurred with the decision to close the matter without a formal investigation.

McGee then sought our review of the grievance-closing decision. Although styled as a petition for review under Alaska Appellate Rules 402 and 403, relating to our

review of court orders, review of a grievance-closing decision is more appropriately an original application for relief under Rule 404(a)(1):

> An original application for relief may be filed with the appellate court or a judge or justice thereof in any matter within its jurisdiction, whenever relief is not available from any other court and cannot be obtained through the process of appeal, petition for review, or petition for hearing. Grant of the application is not a matter of right but of sound discretion sparingly exercised.

We will consider McGee's petition for review as an original application for relief.

### C. Resolution Of McGee's Application For Relief

McGee argues that when deciding not to open his grievance for formal investigation Bar Counsel used the wrong legal standard. McGee contends Bar Counsel refused to open a formal investigation because McGee had not proved an ethical violation by clear and convincing evidence at the grievance intake stage. We agree with McGee that the grievance process does not require presenting clear and convincing evidence of an ethical violation at the grievance intake stage. But we do not read the grievance-closing letter in the same manner as McGee.[16]

The grievance-closing letter reflects that, in addition to McGee's submittals and arguments, Bar Counsel considered: (1) the ALJ decision and underlying record regarding the allegations of impropriety in OPA's contracting process; (2) the Department of Administration's report about OPA's contracting process and McGee's

---

[16] McGee may be influenced in part by some inartful language by the Discipline Liaison in one of the other grievance files, mentioned above at note 15, affirming Bar Counsel's decision not to open a formal investigation because McGee had not "overcome the evidentiary standard required to proceed with this grievance." Bar Counsel actually had declined to open a formal investigation in that matter for essentially the same reasons Bar Counsel declined to open a formal investigation in this matter.

allegations of wrongdoing by OPA's contract investigator and attorneys; and (3) the Department of Law's response to McGee's assertion that the Department of Administration's investigative report was a "whitewash." We conclude that Bar Counsel reasonably could determine that a formal investigation would not bring to light any new material facts relevant to McGee's grievance.

The letter also reflects the application of experience and professional judgment based on the existing record and relevant considerations: Bar Counsel provided a reasonable explanation that the known facts did not suggest a connection between OPA's use of the investigator and any possible ethical violation by the attorney involved in this matter, that a violation would have to be proved to an area hearing committee by clear and convincing evidence, and that there was no good reason to use Bar resources to present a case to volunteer area hearing committee members when there was very little likelihood of proving an ethical violation. The Discipline Liaison reviewed McGee's grievance file and the grievance-closing decision, as requested by McGee, and concurred that a formal investigation was unwarranted. McGee has not suggested that either Bar Counsel or the Discipline Liaison was improperly motivated or influenced in the decision-making process, and it is clear that there was no breakdown in the grievance process.

Bar Counsel has discretion to close a grievance when further pursuit is unwarranted.[17] Bar Counsel's decision to close McGee's grievance without a formal

---

[17] We earlier noted that Bar Rule 22(c) allows Bar Counsel to dismiss a grievance after initiating a formal investigation if Bar Counsel determines that "there is no probable cause to believe that misconduct has occurred." In light of our 2003 amendment to Rule 22(a), we interpret Rule 22(c)'s language to mean that, even after initiating a formal investigation, Bar Counsel may dismiss a grievance when further pursuit is not warranted in light of all the considerations applicable to closing a grievance
(continued...)

investigation was not arbitrary or capricious, and we see no breakdown in the grievance process warranting interference with Bar Counsel's decision.

## III. CONCLUSION

McGee's application for relief is DENIED.

---

[17]  (...continued)
without a formal investigation, as discussed in this opinion.