*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Disciplinary Matter Involving a | ) | |
| | ) | Supreme Court No. S-16032 |
| | ) | |
| DISTRICT COURT JUDGE. | ) | ACJC File No. 2014-007 |
| | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | No. 7156 – March 10, 2017 |
| | ) | |

Original Application from the Alaska Commission on Judicial Conduct.

Appearances: Timothy A. McKeever and Stacey C. Stone, Holmes Weddle & Barcott, P.C., Anchorage, for Petitioner. Marla N. Greenstein, Alaska Commission on Judicial Conduct, Anchorage, and Jeffrey M. Feldman, Summit Law Group PLLC, Seattle, Washington, for Respondent.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

Following a disciplinary sanction, a judge was not recommended for retention by the Alaska Judicial Council. Although the judge chose not to campaign, an independent group supported his retention and campaigned on his behalf. After the election the Alaska Commission on Judicial Conduct filed a disciplinary complaint against the judge and later imposed an informal private admonishment on the judge

because he did not publicly address allegedly misleading statements made by the independent group. Because the statements clearly originated with the independent group rather than the judge, and the judge had no knowledge of one statement, the judge had no duty to publicly address any of the statements. Accordingly, we reverse the Commission's admonishment and dismiss the Commission's complaint against the judge.

## II.    FACTS AND PROCEEDINGS

The petitioner is a state district court judge.[1]   In a previous disciplinary matter, the Alaska Commission on Judicial Conduct filed a recommendation for discipline against the judge.   We adopted the Commission's disciplinary recommendation.   Based on the same misconduct, the Alaska Judicial Council recommended that the judge not be retained in a subsequent election. The judge sought advice from counsel and chose not to mount his own retention campaign.

A close friend of the judge's wife learned about the Council's recommendation and decided to fund an independent campaign to support the judge's retention. She was careful not to share her decision with the judge or his wife. A few weeks before the election she hired a local agent and told him "to put a face to the name and tell folks about [the judge]'s background and experience." The agent registered an independent expenditure group called "Friends of [the Judge]," and his team produced mailers, billboards, social media advertisements, and a website for the campaign. The friend was the sole financial contributor, and the agent exercised nearly complete control over the campaign's messaging.

The judge was kept ignorant of the independent campaign, and the judge had no control over the campaign's activities. The friend stated that she "did not tell [the

---

[1]    This court has ordered that this matter be treated as confidential. Therefore, the judge is referred to throughout this opinion as "the judge."

judge or his wife] of [her] plans, did not involve them in any way in any of the campaign activities, did not solicit or seek their input, and did not request their review or approval of the plans or any materials." Likewise, the agent said the judge had "no awareness or influence . . . . He didn't approve anything that we put out there." The agent did arrange to meet the judge in person and "snap[] a couple photographs" for the campaign, but the judge "seemed a little confused as to who [he] was." The agent told the judge only that he was "a fan of [the judge] and [they had] mutual friends."

Although the judge was aware that he had supporters, he was not aware that there was a campaign. The judge avoided campaigning himself but understood from his counsel that allowing an anonymous supporter to take his photograph would not be improper. He rejected all other requests, telling supporters who wanted to help that he was not involved in any campaigns.

Shortly after the election, the Commission initiated a complaint against the judge, alleging material misrepresentations in the items circulated by the campaign. The Commission later clarified that it was investigating the judge's duty to correct the independent campaign's alleged misrepresentations. The Commission focused its attention on three specific campaign items: a mailer, the website, and a social media advertisement.

The mailer and the website prominently featured two quotes regarding the judge which arose from the judge's previous disciplinary action. Both quotes appeared in the public record and were chosen by the agent's team. The first quote was attributed to another judge: "An excellent knowledge of the law . . . Real skill at legal analysis [sic]."² The second quote was attributed to the Commission itself: "An excellent

---

² Judges cannot publicly endorse candidates for public office. Alaska Code Jud. Conduct Canon 5A(1)(b). The agent's team did not contact the other judge directly; (continued...)

character and reputation." Both the mailer and the website stated that they were "Paid for by Friends of [the Judge]" and that the communications were "not authorized, paid for or approved by the candidate."[3]

The social media advertisement featured an image of the judge tied to a stake and surrounded by flames with the caption: "Witch Hunts are so 18th century." The agent's team had digitally altered the judge's facial expression, added the stake and flames, and come up with the concept and text. The "witch hunt" image was used only online.

The judge did not personally receive the mailer; he first learned about it four days before the election. He learned about the website two days before the election. The judge did not learn about the social media advertisement until well after the election.

After an informal investigation the Commission found that the two quotes falsely implied endorsements from the other judge and the Commission, that the advertisement falsely implied that the recommendation of non-retention was a "witch hunt," that the judge knew or had reason to know of the campaign's existence due to the photography session, that the judge had actual knowledge of the mailer before Election Day, and that the judge took no action to correct the campaign's misrepresentations despite this knowledge. Pursuant to AS 22.30.011(b), the Commission imposed an informal private admonishment on the judge after concluding that the judge's failure to publicly address the two quotes and the social media advertisement violated the Alaska

---

[2]    (...continued)
they found the quote in an online publication.

[3]    Under AS 15.13.135 an independent group must place this disclaimer on published campaign materials "so that it is readily and easily discernible."

Code of Judicial Conduct.[4] The Commission also asked the judge to "correct the public record in some manner to address the concerns raised."

The Commission denied the judge's motion for reconsideration. We granted the judge's original application for relief[5] and now reverse the Commission's admonishment.

## III. PRELIMINARY DISCUSSION

### A. Application For Relief

As a preliminary matter the Commission argues that we should not exercise our power of review over its informal private admonishments. The Commission makes three arguments: (1) the statute governing the Commission's disciplinary authority does not contemplate our review of informal admonishments; (2) informal admonishments are an important tool that will be compromised if they are subject to our review; and (3) an informal admonishment is not a sanction and therefore not a formal action to be reviewed. We are not persuaded.

While it is true that AS 22.30.011 does not provide for supreme court review of the Commission's informal decisions,[6] this is not the first time that a pre-

---

[4]     Specifically, the Commission found that the judge had violated Canons 1, 2A, 5A(3)(a), and 5A(3)(d)(iii).

[5]     *See* Alaska R. App. P. 404(a)(1).

[6]     The Commission addresses judicial complaints through an informal investigation followed by an optional formal hearing. AS 22.30.011. If the Commission does not proceed to a formal hearing, it can "exonerate the judge, informally and privately admonish the judge, or recommend counseling." AS 22.30.011(b). An informal private admonishment "becomes a final disposition 16 days after service on the judge" absent a request for reconsideration. Alaska Jud. Conduct Comm'n R. 11(b)(2). While a formal hearing can lead to a disciplinary recommendation referred to this court, we have no express statutory role in disciplinary decisions that do not reach this stage.

(continued...)

recommendation decision has been reviewed by this court.[7]  We have also previously determined that our review was appropriate under similar circumstances in the attorney discipline context.  In *Anderson v. Alaska Bar Ass'n* a complainant asked us to review the Bar Association's decision not to open an investigation into his grievance alleging attorney misconduct.[8]  The Bar Rules did not provide for supreme court review of these grievance-closing decisions, but we nonetheless concluded that such decisions "may, upon timely request of a complainant, be reviewed by this court."[9]  We explained that our conclusion was "based . . . on the presumption of reviewability pertaining to all final administrative orders, and the inherent authority of this court to regulate the practice of law."[10]

We apply similar reasoning here.  The Commission's admonishment is a final disposition and thus presumed reviewable, and article IV, section 10 of the Alaska Constitution vests in this court "the ultimate authority in disciplinary matters affecting

---

[6]      (...continued)
*See* AS 22.30.011(b), (d).

[7]      In a prior disciplinary case this court reviewed and upheld the Commission's decision not to grant a motion to dismiss at the formal hearing stage before addressing the Commission's substantive disciplinary recommendation.  *In re a Judge* (*Judge II*), 822 P.2d 1333, 1337, 1339 (Alaska 1991).

[8]      *Anderson v. Alaska Bar Ass'n*, 91 P.3d 271, 271-72 (Alaska 2004) (per curiam).

[9]      *Id.* at 272.

[10]      *Id*.; *see also McGee v. Alaska Bar Ass'n*, 353 P.3d 350, 351 (Alaska 2015).

the judiciary."[11] We conclude that we may, upon timely request, review the Commission's imposition of an informal private admonishment.

As with all original applications for relief, a grant of this review is "not a matter of right but of sound discretion sparingly exercised."[12] We appreciate the importance of informal disciplinary tools and the Commission's expertise in handling these matters. Nonetheless, an informal private admonishment can become an aggravating factor in a future disciplinary matter,[13] and Appellate Rule 404 is the only avenue of relief for a judge who wishes to challenge such an admonishment.[14] And the mere possibility of discretionary review should not impede the Commission's ability to conduct informal investigations or affect the Commission's procedures.

Review may be particularly warranted where, as here, the disciplinary decision implicates an unsettled issue of Alaska law affecting judicial conduct. The judge raises a purely legal issue; he challenges the Commission's conclusion that he had a duty to publicly address the statements of an independent campaign. As the ultimate

---

[11] *In re Hanson*, 532 P.2d 303, 307 (Alaska 1975). *See also* Alaska Const. art. IV, § 10 (stating that a judge "may be suspended, removed from office, retired, or censured *by the supreme court* upon the recommendation of the [C]ommission" (emphasis added)); *Judge II*, 822 P.2d at 1339; *In re a Judge* (*Judge I*), 788 P.2d 716, 722 (Alaska 1990).

[12] Alaska R. App. P. 404(a)(1).

[13] *See In re Dooley*, 376 P.3d 1249, 1250-51 (Alaska 2016) (listing "aggravating or mitigating circumstances" as a factor when determining judicial sanctions); *In re Estelle*, 336 P.3d 692, 693, 697 (Alaska 2014) (adopting Commission's disciplinary findings which included a decade-old informal private admonishment as an aggravating circumstance).

[14] AS 22.30.011 makes no provision for direct appeal, which makes Alaska R. App. P. 404 the sole recourse for supreme court review.

authority on matters of judicial discipline, we may "sparingly exercise[]" our discretion to review and resolve these issues.

## B. Standard Of Review

"In judicial disciplinary proceedings, we conduct a de novo review of both the alleged judicial misconduct and the recommended sanction."[15] Although this matter did not arise through the typical disciplinary process, we will apply those standards here.

# IV. DISCUSSION

## A. Alaska Code Of Judicial Conduct

The fundamental issue in this case is whether a judge has a duty to publicly correct or repudiate the statements of independent supporters during an election.

The Alaska Code of Judicial Conduct contains no such express duty. The Code provides broad guidance: A judge shall "uphold the integrity and independence of the judiciary"[16] and "avoid impropriety and the appearance of impropriety in all the judge's activities."[17] In political activities a judicial candidate "shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and

---

[15]    *In re Cummings*, 211 P.3d 1136, 1138 (Alaska 2009). *See also Judge II*, 822 P.2d 1333, 1339 (Alaska 1991) (reviewing de novo "the Commission's determination that petitioner created an appearance of impropriety in violation of the Code of Judicial Conduct"). The Commission asks us to review this matter under the deferential standards of an administrative appeal. Because informal private admonishments are a form of judicial discipline, de novo review is consistent with prior case law.

[16]    Alaska Code Jud. Conduct Canon 1.

[17]    Alaska Code Jud. Conduct Canon 2.

independence of the judiciary."[18] He or she "shall not . . . knowingly misrepresent any fact concerning the candidate or an opposing candidate for judicial office."[19]

Although Canon 5 of the Alaska Code of Judicial Conduct, the canon governing political activities, primarily focuses on a judge's or candidate's own behavior, several provisions address the judge's or candidate's duties with respect to agents and family members. In this context a candidate's duty is strongest when the candidate has the most control: A judicial candidate "*shall not authorize or permit* any person to take actions forbidden to the candidate";[20] "*shall prohibit* employees . . . who serve at the pleasure of the candidate" from violating rules on the candidate's behalf and "*shall discourage* all other employees . . . subject to the candidate's direction and control" from committing the same violations;[21] and "*shall encourage* [family members] to adhere to the same standards that apply to the candidate."[22]

Consistent with this idea, Canon 5 places no express duty on a judge or candidate to address false or misleading election statements outside of his or her control. The Code permits rather than requires a judge to correct falsehoods about a judicial candidate: "[W]hen false information concerning a judicial candidate is made public, a judge or candidate having knowledge of contrary facts *may* make the facts public."[23] The comments to Canon 5 provide one other reference to possible false and misleading

---

[18] Alaska Code Jud. Conduct Canon 5A(3)(a).

[19] Alaska Code Jud. Conduct Canon 5A(3)(d)(iii).

[20] Alaska Code Jud. Conduct Canon 5A(3)(c) (emphasis added).

[21] Alaska Code Jud. Conduct Canon 5A(3)(b) (emphasis added).

[22] Alaska Code Jud. Conduct Canon 5A(3)(a) (emphasis added).

[23] Alaska Code Jud. Conduct Canon 5A(1)(b) (emphasis added).

election statements, in the specialized situation where a candidate seeking judicial appointment has attorney supporters:

> [A] judge need not object when individual lawyers or groups of lawyers decide to circulate a letter in support of [his or her] candidacy. However, these letters must not contain [forbidden] promises or statements . . . , must not contain false statements, and, in general, must not violate any other provision of the Code.[24]

Given that the Code contemplates attorney discipline for candidates who do not become judges,[25] this example is best viewed as a special case addressing conduct by members of the legal profession. Thus, its applicability to the conduct of organizers of an independent judicial campaign appears to be limited.

The judge argues that nothing in the canons requires him to "correct or repudiate" false representations made by people not under his control. The judge refers to the Alaska Code of Judicial Conduct, noting that the Code imposes lesser duties when an actor is outside the judge's control and that the word "may" in Canon 5 is clear in permitting rather than requiring a judge to correct false information. He argues that by definition, a judicial candidate cannot have control over an independent expenditure campaign. The judge also observes that, as a practical matter, it is unclear how a judicial candidate should "publicly address" the statements and conduct of an independent campaign, especially given the media's focus on several hotly contested races during this particular election cycle.

The Commission argues that the Code implies a duty "to publicly address statements by a third party retention election campaign that the public would reasonably associate with the judge and give rise to an appearance of impropriety." This test

---

[24] Alaska Code Jud. Conduct Canon 5B(2) cmt.

[25] *See* Alaska Code Jud. Conduct Canon 5E.

suggests a two-step analysis: first, whether the judge would be reasonably associated with the campaign; second, whether the statements and the association would give rise to an appearance of impropriety. The Commission argues that "deliberate ignorance of campaign activities made in the judge's name should not be condoned."

We agree with the judge's argument that a judicial candidate's awareness of an independent campaign is not, by itself, enough to impose a duty to monitor and address the campaign's statements. Such a duty might force the candidate to wade into the fray, creating tension with the candidate's obligation to "maintain the dignity appropriate to judicial office."[26] Such a duty might also chill others' protected speech in violation of the U.S. and Alaska Constitutions.[27]

But we do not suggest that a judicial candidate's failure to address a known third party misrepresentation would never violate a canon. There may be situations where a candidate must address an independent statement in order to uphold judicial integrity and independence, avoid impropriety, or maintain dignity.[28]

Thus, in addition to determining whether the judicial candidate has violated another canon outright, we will refer to our objective test under Canon 2 when determining whether a judicial candidate's failure to address a false or misleading statement by an independent supporter creates an appearance of impropriety. Under this

---

[26] Alaska Code Jud. Conduct Canon 5A(3)(a).

[27] U.S. Const. amend. I; Alaska Const. art. I, § 5. *See also False or Misleading Campaign Statements*, 38 JUDICIAL CONDUCT REPORTER, no. 2, 2016, at 1 (collecting cases addressing the First Amendment implications of prohibitions on false or misleading statements in judicial elections).

[28] For instance, the Indiana Supreme Court disciplined a candidate because, *inter alia*, she did not seek correction of a newspaper article for which she had been interviewed that attributed a falsehood about her opponent to her. *In re Davis*, No. 24S00-1210-JD-610 (Ind. May 7, 2013).

test we evaluate "whether the judge failed 'to use reasonable care to prevent objectively reasonable persons from believing an impropriety was afoot.' "[29] This duty is "one of taking 'reasonable precautions' to avoid having 'a negative effect on the confidence of the thinking public in the administration of justice.' "[30]

## B. Mailer And Website

The independent campaign produced a mailer and a website containing two prominent quotes. The Commission found that the quotes gave the false impression that another judge and the Commission endorsed the judge's retention. Both the mailer and the website stated that they were "Paid for by Friends of [the Judge]" and that the communications were "not authorized, paid for or approved by the candidate." As required by law, the disclaimer was placed so as to be "readily and easily discernible."[31]

We conclude that the judge had no duty to publicly address the quotes or these materials. We reject the Commission's conclusion that the judge knowingly misrepresented facts in violation of Canon 5A(3)(d)(iii); the record contains no evidence suggesting that the judge had knowledge of the mailers before they were distributed, let alone involvement or control in the selection of the quotes. We see no appearance of impropriety in violation of Canon 2; because the campaign materials are clearly attributed to the "Friends of [the Judge]" group and clearly disclaim the judge's involvement, a reasonable person would not believe that the judge had produced the materials or was linked to the campaign. And because the materials were produced by

---

[29]    *In re Johnstone*, 2 P.3d 1226, 1235 (Alaska 2000) (quoting *Judge II*, 822 P.2d 1333, 1340 (Alaska 1991)).

[30]    *Judge I*, 788 P.2d 716, 723 (Alaska 1990) (quoting *In re Bonin*, 378 N.E.2d 669, 682-83 (Mass. 1978)).

[31]    AS 15.13.135.

an independent expenditure group, the judge would have had no ability to stop the group from publishing the materials even if he had been aware of their contents. The judge should not be disciplined for his failure to publicly address election materials that were clearly attributed to an independent group.

### C. Social Media Advertisement

The independent campaign also produced a social media advertisement featuring an image of the judge tied to a stake with the caption, "Witch Hunts are so 18th century." The Commission stated that the image was "inappropriate to the dignity appropriate to judicial office." The judge agrees that the image was "clearly inappropriate" and that the independent group should not have used the image. However, the judge maintains that he did not see the image until well after the election.

We conclude that the judge had no duty to publicly address the image. There is nothing in the record to contradict his claim that he had no knowledge of the advertisement until well after the election; therefore he could not have knowingly misrepresented facts in violation of Canon 5A(3)(d)(iii). We also see no appearance of impropriety; a reasonable person viewing the ad would not believe that the judge had authorized the image or was involved in its production merely because he was the image's subject. And because the judge did not learn about the image until months after the election, he could not have taken any steps to avoid such an appearance and accordingly could not have violated Canon 2. The judge's consent to be photographed did not give rise to a duty to seek out and monitor an independent campaign he could not legally control, let alone a duty to stop any independent group from publishing any image. The judge should not be admonished for his failure to publicly address a social media image which he had no duty to address and which he did not even know about until months after the election.

## V. CONCLUSION

For the reasons explained above, we REVERSE the Commission's informal private admonishment and DISMISS the Commission's complaint against the judge.